UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO VALDEZ, CDCR #E-98488,<br><br>          Plaintiff,<br><br>vs.<br><br>DR. MARQUEZ,<br><br>          Defendant. | Case No.: 21-cv-1500-MMA (RBM)<br><br>**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS;**<br><br>[Doc. No. 2]<br><br>**AND SCREENING COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b)** |

Ricardo Valdez ("Plaintiff"), currently incarcerated at the Richard J. Donovan State Prison ("RJD") located in San Diego, California, and proceeding *pro se*, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. *See* Doc. No. 1. Plaintiff has not prepaid the civil filing fee required by 28 U.S.C. § 1914(a); instead, he has filed a Motion to Proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). *See* Doc. No. 2.

### I. Request to Proceed In Forma Pauperis

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $ 402. *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C.

§ 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 85 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of: (a) the average monthly deposits in the account for the past six months; or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 85.

Plaintiff has submitted a Prison Certificate signed by an RJD Accounting Officer attesting as to his monthly balances and deposits. *See* Doc. No. 3 at 1; 28 U.S.C. § 1915(a)(2); CivLR 3.2; *Andrews*, 398 F.3d at 1119. These statements show Plaintiff had an average of $ 1,409.94 in monthly deposits to his account, and maintained an average balance of $ 685.38 in his account over the six month period preceding the filing of his current Complaint, and had an available balance of $1,979.51 to his credit at RJD as of August 25, 2021. *See id.*; 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Bruce*, 577 U.S. at 85; *Taylor*, 281 F.3d at 850 (finding

that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered").

Therefore, the Court **GRANTS** Plaintiff's motion to proceed IFP and assesses an initial partial filing fee of $281.99 pursuant to 28 U.S.C. Section 1915(b)(1)(A). The Court directs the Secretary of the CDCR, or her designee, to collect this initial filing fee only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. Section 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered"). The Court further directs the Secretary of the CDCR, or her designee, to collect the remaining balance of the filing fees required by 28 U.S.C. Section 1914 and to forward it to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. Section 1915(b)(1).

## II. SCREENING PURSUANT TO 28 U.S.C. §§ 1915(E)(2) AND 1915A(B)

### A. Standard of Review

Because Plaintiff is a prisoner, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

**B.     Plaintiff's Factual Allegations**

Plaintiff alleges that on or around August 25, 2021, Defendant Dr. Marquez was speaking with an inmate in the cell next door to his. *See* Doc. No. 1 at 3. While Marquez was next door, Plaintiff began using his bathroom to urinate. *See id*. Plaintiff claims Marquez asked him why he was urinating while she was talking to the inmate next door, to which Plaintiff responded, "because it's my cell, my privacy, and I need to use the bathroom," and that "if she don't like it to close her ears, fucken shit." *Id*. According to Plaintiff, Marquez could not see him from where she was standing but could hear him urinating. *Id*. Marquez allegedly told Plaintiff that if he did not stop urinating, she would initiate disciplinary action against him. *Id*. When Plaintiff ignored Marquez, Plaintiff claims she told him she would "issu[e] a 115 (disciplinary action) and make sure [he] got

an 'R' suffix so [he would] get a sex offender sign while [he] was in AdSeg so other inmates hurt [him]." *Id.*

Shortly thereafter, Plaintiff alleges "an officer put[] up the sign on my door labeling me as a sex offender in front of other inmates," which "put [his] life in danger." *Id.* Plaintiff claims the sign remained on his door for one month and that he received "many death threats from other inmates" as a result. *Id.* He also received a copy of the 115 issued by Marquez, which, according to Plaintiff, falsely alleged Plaintiff exposed himself to Marquez and did "other sexual things to her from my cell." *Id.*

Plaintiff claims the 115 disciplinary action was dismissed at the hearing because the hearing officer told him "there was no way for Dr. Marquez to have seen what she claims to have [seen]," and concluded that Marquez was lying. *Id.* at 3–4. Plaintiff alleges that when he was released from AdSeg, he "got punch[ed] by another inmate because of me [being] label[ed] as a sex offender." *Id.* at 4. He claims Marquez violated his Eighth Amendment rights to be free from cruel and unusual punishments and his First Amendment rights. *See id.* at 4–5. He seeks injunctive relief and damages. *See id.* at 7.

**C.  Discussion**

In Count One, Plaintiff contends defendant Dr. Marquez violated his Eighth Amendment rights to be free from cruel and unusual punishments when she falsely accused him of indecent exposure in her disciplinary report. *See* Doc. No. 1 at 3–4. According to Plaintiff, this resulted in him being labeled as a sex offender, which in turn resulted in him being targeted and assaulted by other inmates. *See id.* In Count Two, Plaintiff alleges Marquez submitted the false disciplinary report and in order to have him labeled as a sex offender in retaliation for his refusal to stop urinating while she was speaking with the inmate in the cell next to his, violating his First Amendment rights. *See id.* at 4–5.

1.  *Eighth Amendment (Count One)*

The treatment a prisoner receives in prison, and the conditions under which he is confined, are subject to scrutiny under the Eighth Amendment. *See Farmer v. Brennan*,

1   511 U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). The
2   Eighth Amendment imposes a duty on prison officials to provide humane conditions of
3   confinement. *See id*. This duty includes ensuring that inmates receive adequate food,
4   clothing, shelter, sanitation, and medical care, and taking reasonable measures to
5   guarantee the safety of inmates. *See id*. In order to establish an Eighth Amendment
6   violation, a prisoner must satisfy a two-part test containing both an objective and a
7   subjective component. To state a claim, the Eighth Amendment requires allegations
8   sufficient to plausibly show that prison officials were deliberately indifferent to a
9   substantial risk of harm or safety. *See id*. at 847. The objective component of an Eighth
10  Amendment requires that a prisoner show he was deprived of something "sufficiently
11  serious." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer*, 511
12  U.S. at 834). The state of mind requirement under the subjective component of the
13  Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's
14  health or safety. *Farmer*, 511 U.S. at 834. Under the "deliberate indifference" standard,
15  a prison official cannot be found liable for denying an inmate humane conditions of
16  confinement unless the official knows of and disregards an excessive risk to inmate
17  health or safety. *Id*. at 837.
18         Plaintiff alleges that Marquez submitted a false disciplinary report accusing him of
19  exposing himself to her, which resulted in Plaintiff being identified to other inmates as a
20  sex offender, putting him at risk of assault by other inmates, and being punched by
21  another inmate *See* Doc. No. 1 at 3–4. Identifying an inmate as a sex offender to other
22  inmates has been found to satisfy the objective component of an Eighth Amendment
23  claim. *See Morris v. Burkhouse*, No. CV 19-5839-SVW (KK), 2021 WL 2119497, at *4
24  (C.D. Cal. March 24, 2021) (finding that a correctional officer's false accusation of
25  indecent exposure in order to label plaintiff as a sex offender was sufficient to
26  demonstrate plaintiff faced "a substantial risk of harm to his health and safety") (citing
27  *Neal v. Shimoda*, 131 F.3d 818, 829 (9th Cir. 1997) (analyzing due process claim and
28  stating, "We can hardly conceive of a state's action bearing more 'stigmatizing

consequences' than the labeling of a prison inmate as a sex offender")).

Further, Plaintiff alleges Marquez told him she falsified the disciplinary report for the express purpose of identifying him as a sex offender and knowing it would put him at risk of being assaulted by other inmates. *See* Doc. No. 1 at 3–4. This is sufficient to establish the subjective element of an Eighth Amendment violation. *See Morris*, 2021 WL 2119497, at *4 (stating that "[t]he allegations that Defendants, for the purpose of being malicious and vindictive and identifying Plaintiff to the prison population as a sex offender, falsely accused Plaintiff of a violation which they knew would result in dangerous consequences are sufficient to establish Defendants acted with deliberate indifference to Plaintiff's safety"). Accordingly, the Court concludes Plaintiff has stated an Eighth Amendment claim against Defendant Marquez. *See id.*; *see also Nailing v. Fosterer*, No. CIV S-09-2475-MCE (CMK), 2012 WL 1130655, at *8 (E.D. Cal. Mar. 2, 2012) (finding Eighth Amendment deliberate indifference claim sufficiently pled because "a reasonable jury could conclude that defendants were deliberately indifferent to the generally known risk sex offenders face in the prison general population"); *Crane v. Gonzales*, No. CV-F-03-6339 OWW WMW P, 2008 WL 2168927, at *2 (E.D. Cal. May 23, 2008) (calling a prisoner a "child molester" in presence of fellow inmates stated Eighth Amendment claim), report and recommendation adopted, No. CV-F-03-6339 LJO WMW PC, 2008 WL 2676780 (E.D. Cal. June 30, 2008); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989) (labeling prisoner a "snitch" in the presence of other inmates is sufficient to state a claim of deliberate indifference to an inmate's safety); *Adams v. Tilton*, No. 1:07-CV-00791 GSA PC, 2009 WL 2915100, at *13 (E.D. Cal. Sept. 9, 2009) (calling plaintiff a "Chester" in front of other inmates is akin to calling him a "snitch").

    2.    Retaliation (Count Two)

In Count Two, Plaintiff claims he "[has] a right to have my own privacy and use [the] bathroom whenever I need it to while I am in my cell." *See* Doc. No. 1 at 4. He claims Marquez "retaliated [against] me [by filing a false disciplinary report] because I

didn't stop using the bathroom when she told me just because I was peeing [and] I was making noise." *Id.*

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)).

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). Prisoners have no right to privacy in their cell. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984).

Privacy while using the bathroom in one's cell is not "protected conduct." While prisoners do have a limited right to bodily privacy, "as with all constitutional rights, [a prisoner] retains that right in prison only insofar as it is consistent with his status as a prisoner." *Rodriguez v. Ames*, 287 F. Supp. 2d 213, 220–21 (W.D.N.Y. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

> In this regard, there are many unfortunate and embarrassing circumstances prisoners must endure as part of their daily lives. Many prisoners, like the plaintiff here, share their cells with others and have very little privacy in certain daily activities. However, 'routine discomfort is part of the penalty that criminal offenders pay for their offenses against society.' *Hudson v. Mc Millian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quoting *Rhodes*, 452 U.S. at 347).

*Id.*

Further, Plaintiff has not plausibly alleged that Marquez's actions "chilled [the] exercise of his First Amendment rights," or that they "did not reasonably advance a

legitimate correctional goal." *Rhodes*, 408 F.3d at 567–68.  Accordingly, he has failed to state a First Amendment retaliation claim.  *See id.*; *Iqbal*, 556 U.S. at 678.

## II. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a).  The Court **DIRECTS** the Secretary of the CDCR or her designee, to collect from Plaintiff's inmate trust account the $ 281.99 initial filing fee assessed in this Order if those fees are available in Plaintiff's account and to thereafter garnish whatever remains of the $ 350 filing fee owed in this case by garnishing monthly payments in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).  ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.  The Court further **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, or in the alternative by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

Finally, the Court **DISMISSES** Plaintiff's retaliation claim against Defendant Marquez for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(b).  The Court **GRANTS** Plaintiff sixty (60) days leave from the date of this Order in which to either: (1) Notify the Court of his intention to proceed with the Eighth Amendment claims against Marquez only; or (2) File an Amended Complaint which cures all the deficiencies of pleading noted.  Plaintiff's Amended Complaint must be complete in itself without reference to his original pleading.  Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived.  *See* CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if

not repled."). If Plaintiff chooses to proceed as to his Eighth Amendment claims against Marquez, or does not respond to this Order, the Court will issue an Order directing the U.S. Marshal to effect service of his Complaint on Defendant Marquez and dismiss the remaining claims.

**IT IS SO ORDERED**.

Dated:  October 7, 2021

HON. MICHAEL M. ANELLO
United States District Judge

not repled.").  If Plaintiff chooses to proceed as to his Eighth Amendment claims against Marquez, or does not respond to this Order, the Court will issue an Order directing the U.S. Marshal to effect service of his Complaint on Defendant Marquez and dismiss the remaining claims.

**IT IS SO ORDERED**.

Dated:  October 7, 2021

HON. MICHAEL M. ANELLO
United States District Judge