UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO VALDEZ, CDCR #E-98488,<br><br>                         Plaintiff,<br><br>vs.<br><br>DR. MARQUEZ,<br><br>                         Defendant. | Case No.:  21-cv-1500-MMA (RBM)<br><br>**ORDER DISMISSING CLAIMS AND DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF SECOND AMENDED COMPLAINT AND SUMMONS PURSUANT TO 28 U.S.C. § 1915(d) & Fed. R. Civ. P. 4(c)(3)** |

On August 24, 2021, Ricardo Valdez ("Plaintiff" or "Valdez"), currently incarcerated at the Richard J. Donovan State Prison ("RJD") located in San Diego, California, and proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983.  Doc. No. 1.  Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a); instead, he filed a Motion to Proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a).

On October 7, 2021, the Court granted Valdez's IFP motion, dismissed some of the claims in his complaint pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and gave Valdez sixty (60) days within which to notify the Court of his intent to proceed with his

undismissed claims or file an Amended Complaint that cured the pleading deficiencies outlined in the Court's October 7, 2021 Order. Doc. No. 4.

On November 8, 2021, an Amended Complaint ("Am. Compl.") was filed in this case, but the Plaintiff was no longer identified as Ricardo Valdez. Doc. No. 5. Instead, Raul Arellano was listed as the Plaintiff. *Id.* The Court dismissed the Amended Complaint on January 5, 2022, explaining that a *pro se* litigant may not represent anyone but himself and does not have the authority to assert others' claims vicariously. Doc. No. 6 at 2 (citing *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997)). The Court granted Plaintiff Valdez thirty days within which to file a Second Amended Complaint which cured the pleading deficiencies outlined in the Court's October 7, 2021 dismissal Order. *Id.* at 3. Valdez filed a Second Amended Complaint on January 11, 2022. Doc. No. 7 ("SAC").

## I. SCREENING PURSUANT TO 28 U.S.C. §§ 1915(E)(2) AND 1915A(B)

### A.   Standard of Review

As with his preceding Complaints, because Valdez is a prisoner, his SAC requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th

Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id*.; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

**B.    Plaintiff's Factual Allegations**

Valdez alleges that while he was housed in Administrative Segregation ("Adseg") on or around August 18, 2021, Defendant Dr. Marquez was speaking with an inmate in the cell next door to his. SAC at 3. While Marquez was next door, Valdez began using his bathroom to urinate. *Id*. Valdez claims Marquez asked him why he was urinating while she was talking to the inmate next door, to which Valdez responded, "because it's my cell, my privacy, and I need to use the bathroom," and that "if she don't like it to close her ears, fucken shit." *Id*. According to Valdez, Marquez could not see him from where she was standing but could hear him urinating. *Id*. Marquez allegedly told Valdez that if he did not stop urinating she would initiate disciplinary action against him. *Id*. When Valdez ignored Marquez, Valdez claims she told him she would "issu[e] a 115 (disciplinary action) and make sure [he] got an 'R' suffix so [he would] get a sex offender sign while [he] was in Adseg so other inmates hurt [him]." *Id*. Valdez claims he told Marquez "that if she gives me a 115 I'll file a grievance for her unreasonably giving me a 115." *Id*.

Shortly thereafter, Valdez alleges "an officer put[] up the sign on my door labeling me as a sex offender in front of other inmates," which "put [his] life in danger." *Id.* Valdez claims the sign remained on his door for one month and that he received "many death threats from other inmates" as a result. *Id.* He also received a copy of the 115 issued by Marquez, which, according to Valdez, falsely alleged Valdez exposed himself to Marquez and did "other sexual things to her from my cell." *Id.*

Valdez claims the 115 disciplinary action was dismissed at the hearing because the hearing officer told him "there was no way for Dr. Marquez to have seen what she claims to have [seen]," and concluded that Marquez was lying. *Id.* at 3–4. Valdez alleges that when he was released from AdSeg, he "got punch[ed] by another inmate because of me [being] label[ed] as a sex offender." *Id.* at 4. He claims Marquez violated his Eighth Amendment rights to be free from cruel and unusual punishments and his First Amendment rights by retaliating against him for urinating in his cell by filing a false report of indecent exposure in order to cause officials to place a sex offender sign on his cell door. *Id.* at 4–6. He seeks injunctive relief and damages. *Id.* at 7.

## C. Discussion

In Ground One, Valdez contends defendant Dr. Marquez violated his Eighth Amendment rights to be free from cruel and unusual punishments when she falsely accused him of indecent exposure in her disciplinary report. *Id.* at 3–4. According to Valdez, this resulted in him being labeled as a sex offender, which in turn resulted in him being targeted and assaulted by other inmates. *Id.* In Grounds Two and Three, Valdez alleges Marquez submitted the false disciplinary report and in order to have him labeled as a sex offender in retaliation for his refusal to stop urinating while she was speaking with the inmate in the cell next to his, violating his First Amendment rights. *Id.* at 4–8.

### 1. Eighth Amendment (Ground One)

The treatment a prisoner receives in prison, and the conditions under which he is confined, are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). The Eighth

Amendment imposes a duty on prison officials to provide humane conditions of confinement. *Id*. This duty includes ensuring that inmates receive adequate food, clothing, shelter, sanitation, and medical care, and taking reasonable measures to guarantee the safety of inmates. *Id*. In order to establish an Eighth Amendment violation, a prisoner must satisfy a two-part test containing both an objective and a subjective component. To state a claim, the Eighth Amendment requires allegations sufficient to plausibly show that prison officials were deliberately indifferent to a substantial risk of harm or safety. *Id*. at 847. The objective component of an Eighth Amendment requires that a prisoner show he was deprived of something "sufficiently serious." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer*, 511 U.S. at 834). The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Under the "deliberate indifference" standard, a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Id*. at 837.

Valdez alleges Marquez submitted a false disciplinary report accusing him of exposing himself to her, which resulted in Valdez being identified to other inmates as a sex offender, putting him at risk of assault by other inmates, and being punched by another inmate. SAC at 3–4. Identifying an inmate as a sex offender to other inmates has been found to satisfy the objective component of an Eighth Amendment claim. *Morris v. Burkhouse*, No. CV 19-5839-SVW (KK), 2021 WL 2119497, at *4 (C.D. Cal. March 24, 2021) (finding that a correctional officer's false accusation of indecent exposure in order to label plaintiff as a sex offender was sufficient to demonstrate plaintiff faced "a substantial risk of harm to his health and safety") (citing *Neal v. Shimoda*, 131 F.3d 818, 829 (9th Cir. 1997) (analyzing due process claim and stating, "We can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender")).

Further, Valdez alleges Marquez told him she falsified the disciplinary report for the express purpose of identifying him as a sex offender and knowing it would put him at risk of being assaulted by other inmates. SAC at 3–4. This is sufficient to establish the subjective element of an Eighth Amendment violation. *See Morris*, 2021 WL 2119497, at *4 (stating that "[t]he allegations that Defendants, for the purpose of being malicious and vindictive and identifying Plaintiff to the prison population as a sex offender, falsely accused Plaintiff of a violation which they knew would result in dangerous consequences are sufficient to establish Defendants acted with deliberate indifference to Plaintiff's safety"). Accordingly, the Court concludes Valdez has stated an Eighth Amendment claim against Defendant Marquez. *Id.*; *Nailing v. Fosterer*, No. CIV S-09-2475-MCE (CMK), 2012 WL 1130655, at *8 (E.D. Cal. Mar. 2, 2012) (finding Eighth Amendment deliberate indifference claim sufficiently pled because "a reasonable jury could conclude that defendants were deliberately indifferent to the generally known risk sex offenders face in the prison general population"); *Crane v. Gonzales*, No. CV-F-03-6339 OWW WMW P, 2008 WL 2168927, at *2 (E.D. Cal. May 23, 2008) (calling a prisoner a "child molester" in presence of fellow inmates stated Eighth Amendment claim), report and recommendation adopted, No. CV-F-03-6339 LJO WMW PC, 2008 WL 2676780 (E.D. Cal. June 30, 2008); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989) (labeling prisoner a "snitch" in the presence of other inmates is sufficient to state a claim of deliberate indifference to an inmate's safety); *Adams v. Tilton*, No. 1:07-CV-00791 GSA PC, 2009 WL 2915100, at *13 (E.D. Cal. Sept. 9, 2009) (calling plaintiff a "Chester" in front of other inmates is akin to calling him a "snitch").

    2.    <u>Retaliation (Grounds Two and Three)</u>

In Grounds Two and Three, Valdez claims he "[has] a right to have my own privacy and use [the] bathroom whenever I need it to while I am in my cell." SAC at 4–8. He claims Marquez "retaliated [against] me [by filing a false disciplinary report] because I didn't stop using the bathroom when she told me just because I was peeing [and] I was making noise" and by causing a sign identifying him as a sex offender to be

placed on his cell door. *Id.*

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

Prisoners have no right to privacy in their cell, *Hudson v. Palmer*, 468 U.S. 517, 526 (1984), and thus privacy while using the bathroom in one's cell is not "protected conduct." While prisoners do have a limited right to bodily privacy, "as with all constitutional rights, [a prisoner] retains that right in prison only insofar as it is consistent with his status as a prisoner." *Rodriguez v. Ames*, 287 F. Supp. 2d 213, 220–21 (W.D.N.Y. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

> In this regard, there are many unfortunate and embarrassing circumstances prisoners must endure as part of their daily lives. Many prisoners, like the plaintiff here, share their cells with others and have very little privacy in certain daily activities. However, 'routine discomfort is part of the penalty that criminal offenders pay for their offenses against society.' *Hudson v. Mc Millian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quoting *Rhodes*, 452 U.S. at 347).

*Id*.

Moreover, "although a prisoner has a First Amendment right to file a written prison grievance, a prisoner's verbal challenge to a prison official's direct order is not protected First Amendment activity." *MacFalling v. Nettleton*, No. CV1702399SVWAFM, 2017 WL 3498616, at *5 (C.D. Cal. Aug. 15, 2017) (citing

*Parran v. Wetzel*, 2016 WL 1162328, *6, 2016 U.S. Dist. LEXIS 37340, *16 (M.D. Pa., Mar. 23, 2016) ("an inmate's First Amendment rights do not include the right to debate staff orders prior to obeying them, disregard prison rules, or engage in activities that may incite a disturbance")); *Rangel v. LaTraille*, 2014 WL 4163599, at *8, 2014 U.S. Dist. LEXIS 116262, at *21 (E.D. Cal., Aug. 20, 2014) (collecting cases and finding that inmate's "refusal to comply with orders is not protected conduct under the First Amendment").

Valdez has not sufficiently alleged he engaged in protected conduct, and thus he has not plausibly alleged a First Amendment retaliation claim. *Rhodes*, 408 F.3d at 567–68; *Iqbal*, 556 U.S. at 678.

## II. Conclusion and Order

Based upon the foregoing, the Court **DISMISSES** Plaintiff's retaliation claims without leave to amend against Defendant Marquez for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(b) because amendment would be futile. The Court **DIRECTS** the Clerk to issue a summons as to Plaintiff's Second Amended Complaint, Doc. No. 7, for Defendant Dr. Marquez and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for this Defendant. The Clerk will provide Plaintiff with certified copies of his Second Amended Complaint and the summons so that he may serve Defendant. Upon receipt of this "In Forma Pauperis Package," Plaintiff must complete the USM Form 285s as completely and accurately as possible, include an address where Defendant may be found and/or subject to service pursuant to S.D. Cal. CivLR 4.1(c), and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying the In Forma Pauperis Package. The Court further **ORDERS** the U.S. Marshal to serve a copy of the Second Amended Complaint, Doc. No. 7, and summons upon Defendant Dr. Marquez directed by Plaintiff on the USM Form 285s provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

  The Court **ORDERS** Defendant, once served, to reply to Plaintiff's Second Amended Complaint and any subsequent pleading Plaintiff files in this matter in which Defendant is named as a party within the time provided by the applicable provisions of Federal Rules of Civil Procedure 12(a) and 15(a)(3). *See* 42 U.S.C. § 1997e(g)(2) (while Defendants may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening Defendants are required to respond).

  The Court **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendant, or if appearance has been entered by counsel, upon Defendant's counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk, a certificate stating the manner in which a true and correct copy of that document was served on Defendant or his counsel, and the date of that service. *See* CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon the Defendant, or his counsel, may be disregarded.

  **IT IS SO ORDERED**.

Dated: January 19, 2022

              HON. MICHAEL M. ANELLO
              United States District Judge